# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MARY COLLEEN MESSERLI,

Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,[1]

Defendant.

Case No. 1:16-cv-00800-SKO

ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT

(Doc. 1)

## I. INTRODUCTION

On June 9, 2016, Plaintiff Mary Colleen Messerli ("Plaintiff") filed a complaint under 42 U.S.C. §§405(g) and 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income (SSI). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K.

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration. *See* https://www.ssa.gov/agency/commissioner.html (last visited by the court on February 27, 2017). She is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

Oberto, United States Magistrate Judge.[2]

## II. BACKGROUND

On January 31, 2013, Plaintiff filed a claim for SSI payments, alleging she became disabled on January 3, 2013, due to "heart disease, 89% aorta, 60% left anterior arteries," "copd," "depression," "obes[ity]," "h[igh] b[lood] p[ressure]," and "cholesterol." (Administrative Record ("AR") 19, 23, 69, 161–66, 174.) Plaintiff was born on November 13, 1961, and was 51 years old on the date the application was filed. (AR 27, 45, 161.) From 2007 to January 2013, Plaintiff worked in a rehabilitation facility. (AR 23, 46, 195.) Prior to that, Plaintiff worked at a fast food restaurant and performed janitorial services. (AR 23, 46, 195.)

### A. Relevant Medical Evidence[3]

In January 2013, Plaintiff was noted as having appropriate affect and demeanor, a normal speech pattern, and grossly normal memory. (AR 322.) Clinical psychologist James McNairn, Psy.D., performed a psychological evaluation of Plaintiff on May 16, 2013, at the request of the Department of Social Services. (AR 371–77.) Plaintiff reported depression, anxiety, poor memory, impaired sleep and appetite, and social withdrawal. (AR 372.) She relayed that she completes household chores including cooking and cleaning, dependent on her energy level. (AR 374.) Plaintiff described her typical day as sleeping from 10:00 pm to 6:00 am. (AR 374.) She eats two meals a day and bathes three times a week. (AR 374.) Plaintiff reported that she did not require assistance with bathing, dressing, or personal hygiene, and that she is able to do shopping and run errands independently. (AR 374.) She stated that she visits with family and friends, and her leisurely activities include television and music. (AR 374.)

Dr. McNairn observed that Plaintiff's psychomotor activity was slowed, her movements were awkward, and her eye contact was fair to good. (AR 374.) She was alert and oriented. (AR 375.) Plaintiff was slow in responding to questions but displayed no significant impairments in concentration, persistence, or pace. (AR 374.) Plaintiff's thought processes were "slowed" but "organized and logical." (AR 375.) She reported "auditory hallucinations of 'voices,' derogatory

---
[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 7, 8.)
[3] As Plaintiff's assertion of error is limited to the ALJ's consideration of her alleged mental disorder(s), only evidence relevant to those arguments is set forth below.

2

type" and claimed "visual hallucinations of 'Spirits' and objects." (AR 375.) Plaintiff reported she was paranoid, suspicious, and distrustful of people. (AR 375.) She described her mood as depressed. (AR 375.) Dr. McNairn noted that Plaintiff "was generally cooperative and pleasant throughout the evaluation but she seemed eager to claim mental illness and functioning difficulties" and that she "appeared to be exaggerating symptoms at times." (AR 374.)

Dr. McNairn diagnosed Plaintiff with major depressive disorder, moderate with psychotic features; polysubstance dependence, in sustained remission; and rule out substance-induced mood/psychotic disorder, and assigned Plaintiff a Global Assessment of Functioning Score of 55. (AR 376.) He noted that Plaintiff reported symptoms were "consistent with a mood disorder," and that the severity of her disorder was "in the moderate range," with a "fair" likelihood of her mental condition improving in the next 12 months, given her receipt of psychiatric mediations. (AR 376.) Dr. McNairn opined that Plaintiff is not capable of managing her own funds based on her history of substance abuse and antisocial behavior; that her ability to perform simple and repetitive tasks is "mildly impaired" and to perform complex and detailed tasks is "moderately impaired"; that her ability to accept instructions from supervisors and interact appropriately with coworkers and the public is "moderately impaired"; that her ability to perform work activities on a consistent basis without special or additional instruction is "mildly-to-moderately impaired"; that her ability to maintain work attendance and to complete a normal workday and workweek without interruptions from psychological problems is "moderately impaired"; and that her ability to deal with the usual stress encountered in a competitive workplace is "moderately to seriously impaired." (AR 376–77.) Dr. McNairn concluded that Plaintiff's "problems are treatable," and that she would benefit from continued psychiatric medication as well as individual and group counseling. (AR 377.)

Plaintiff sought treatment from the Kern County Mental Health Department in June 2013 for depression and anxiety. (AR 379–99.) Plaintiff reported isolating herself from other people, experiencing insomnia, and that she "feels sad most of the day." (AR 379.) Plaintiff reported experiencing some stressors in the past couple of years and that she has difficulty concentrating. (AR 379.) She related that she stopped participating in activities that she used to enjoy, and that

3

she had feelings of worthlessness and guilt. (AR 379–80.) Plaintiff reported difficulty going out in public, especially places where there are a lot of people, and that she experiences "periods where her heart will pound and she feels a strong need to flee the area." (AR 380.) She reported chronic history of panic attacks, depression, psychosis and paranoia. (AR 392.) Plaintiff has a history of methamphetamine use but has been clean since 2006. (AR 392.)

Rizwana Shaheen, M.D. examined Plaintiff in June 2013, and noted that Plaintiff made good eye contact, was pleasant and cooperative, had an anxious, dysphoric, and frustrated mood, was tearful and "very anxious," had normal speech, impaired concentration, was inattentive, and had average intelligence. (AR 393–95.) Dr. Shaheen noted that Plaintiff had paranoid ideation with auditory and visual hallucinations. (AR 395.) Dr. Shaheen assessed Plaintiff with panic disorder with agoraphobia, psychotic disorder NOS, major depression, agoraphobia without history of panic disorder, and amphetamine dependence. (AR 396.) Plaintiff was prescribed medication for depression, psychotic and paranoid symptoms, and insomnia. (AR 398.)

On June 14, 2013, a Disability Determinations Service non-examining consultant, Uwe Jacobs, Ph.D., reviewed the record and analyzed the case. (AR 75–81.) Dr. Jacobs opined that Plaintiff was "moderately limited" in her ability to: carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (AR 80.) Dr. Jacobs also found that Plaintiff's ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, as well as her ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, were both "moderately limited." (AR 81.) Dr. Jacobs opined that Plaintiff "may require limited contact with others/public." (AR 81.)

Plaintiff presented to Dr. Shaheen on September 24, 2013, for a "[p]rogress [e]valuation." (AR 406–12.) Plaintiff reported feeling "less depressed and fatigued" and "sleeping better" with her medications, from which she reported no side effects. (AR 406.) Plaintiff's grooming was

4

neat, her eye contact was good, her behavior cooperative, and her speech and psychomotor skills were normal. (AR 407.) Her mood was noted as dysphoric, with goal-oriented thought processes and unremarkable thought content. (AR 407.) Plaintiff denied psychotic symptoms. (AR 410.) Dr. Shaheen noted that Plaintiff was "feeling a lot better" with her current medication regimen. (AR 411.)

On November 21, 2013, a Disability Determinations Service non-examining consultant, Heather Barrons, Psy.D., reviewed the record and analyzed the case on reconsideration. (AR 89–97.) Dr. Barrons adopted the initial decision finding Plaintiff could perform simple, repetitive, tasks with limited public contact. (AR 90, 92.) In addition to the limitations noted by Dr. Jacobs, Dr. Barrons found that Plaintiff was "moderately limited" in her ability to: interact with the general public; accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in the work setting. (AR 96–97.) Dr. Barrons opined that Plaintiff was able to accept supervision and interact with co-workers on a non-collaborative basis, to tolerate brief public contact, and to adapt to a routine work environment, subject to the specified limitations. (AR 97.)

Dr. Shaheen completed a "Short-Form Evaluation for Mental Disorders" evaluation of Plaintiff on February 24, 2014. (AR 468–71.) Dr. Shaheen observed that Plaintiff was "somewhat stabilized . . . but not able to look for or interview for a job due to panic attacks/depression." (AR 470.) She found Plaintiff's concentration was moderately impaired and her memory mildly impaired. (AR 469.) Dr. Shaheen opined that Plaintiff had poor ability to: understand, remember, and carry out complex instructions; maintain concentration, attention, and persistence; perform activities within a schedule and maintain regular attendance; complete a normal workday and workweek without interruptions from psychologically based symptoms; and respond appropriately to changes in a work environment. (AR 471.)

In July and September 2014, Plaintiff complained of headaches, but her psychiatric symptoms were "[u]nremarkable (normal)." (AR 685, 688.) In October 2014, Plaintiff was seen by psychiatrist Abdolreza Saadabadi, M.D., for a follow-up appointment. (AR 675–81.) Dr. Saadabadi noted that Plaintiff complained of anxiety and insomnia, and "needs to take her

5

clonazepam every day." (AR 675.) Plaintiff felt her medication was "helpful." (AR 675.) She reported "hearing voices of people talking as background noise at night when it is dark," but said it was "tolerable." (AR 675.) Plaintiff noted she is "able to use coping skills to stay safe," and that "medications are helping [her] to have better mood and sleep better." (AR 675.) Dr. Saadabadi observed Plaintiff as "pleasant and cooperative with good medication adherence." (AR 675.) Plaintiff's mood was anxious with auditory hallucinations, but she had neat grooming, good eye contact, normal psychomotor skills, cooperative behavior, appropriate affect, coherent and logical thoughts, and intact attention and concentration. (AR 675–77.)

**B.     Plaintiff's Statement**

On April 12, 2013, Plaintiff completed an adult function report. (AR 186–94.) Plaintiff stated that she has "zero tolerance" dealing with people. (AR 186.) When asked to describe what she did from the time she wakes up to the time she goes to bed, Plaintiff reported that she eats breakfast, watches TV, eats dinner, then goes to bed, and takes 3 to 4 naps daily. (AR 187.) She reported that she has no problem with her personal care, but sometimes needs help or reminders taking medication. (AR 187–88.) Plaintiff prepares frozen dinners, sandwiches, and one-course meals, and performs light housework (vacuuming, dusting, dishes), but stated that it takes her "all day" to do so. (AR 188.) She reported that she needs help or encouragement performing these tasks because she "doesn't feel good" and is "sick all the time." (AR 188.) Plaintiff stated that she goes outside only when visiting the doctor, because it makes her nervous to go outside. (AR 189.) She does not drive or go out alone because she is scared that no one would be there to help her if something were to go wrong with her heart. (AR 189.) Plaintiff testified she shops for food and for clothing in stores, by phone, and by computer. (AR 189.)

Plaintiff is able to pay bills, count change, handle a savings account, handle a checking account, and use a checkbook. (AR 189.) Plaintiff's interest and hobby is watching television "all the time" because she "has nothing else to do" and "hate[s] people." (AR 190.) She reported that she does not spend time with others and does not leave her house other than for doctor's appointments. (AR 190.) According to Plaintiff, she has a "long history" of depression and antisocial disorder. (AR 191.) She has to write down spoken instructions. (AR 191.) Plaintiff

6

reported that she has does not get along well with authority figures and was fired from her last job because she did not get along with her boss. (AR 192.) She stated that she does not handle stress well: she cries a lot and hides from people to avoid conflict, including hiding in her room when she sees people approach her door. (AR 192.) Plaintiff reported that changes in routine make her "nervous." (AR 192.) She takes Celexa and Trazodone, but still does not sleep well and has headaches as a result. (AR 193.)

**C.     Administrative Proceedings**

Plaintiff filed an application for SSI on January 31, 2013, alleging she became disabled on January 3, 2015. (AR 19, 23, 69, 161–66, 174.) The agency denied Plaintiff's application for benefits initially on June 24, 2013, and again on reconsideration on December 12, 2013. (AR 102–105, 111–15.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 117–19.) On October 20, 2014, Plaintiff appeared with counsel and testified before an ALJ. (AR 42–68.)

**1.     Plaintiff's Testimony**

Plaintiff testified she was 52 years old at the time of the hearing. (AR 45.) She lives with a female friend. (AR 56.) Plaintiff said in a "typical day" she gets up at 4:30 am in the morning, makes coffee, watches television, makes breakfast, watches more television, takes a nap, watches television, makes dinner in the microwaves, watches more television, then goes to bed. (AR 48.) She occasionally cleans and vacuums, and she is able to cook using the microwave, do dishes, and do laundry. (AR 48.) Plaintiff testified she periodically drives and occasionally grocery shops. (AR 45, 48.) She sometimes uses a computer to access Facebook, mainly to communicate with her daughter, for no more than an hour a day. (AR 49, 58.) Plaintiff testified that she cooks, does the dishes, and does some cleaning in exchange for rent. (AR 50.) She testified that her medications are "effective," there are no side effects, and that she's "better with them than [she is] without them." (AR 49.)

Plaintiff sought mental health treatment in 2013 when she had a "nervous breakdown" as a result of losing her job. (AR 56.) She became "agoraphobic" and it made her "sick to leave the house." Plaintiff testified that she has trouble sleeping and cannot be in the same room as her

7

siblings because she "freak[s] out." (AR 56–57.) If anyone visits, she goes to her room to lie down. (AR 48.) Plaintiff testified she has a "problem with socializing with other people." (AR 58.) She sees her daughter and grandkids every once in a while, but does not attend their school events due to anxiety. (AR 59.) She said she gets anxiety attacks and hides in her room. (AR 59.)

### 2. Vocational Expert's Testimony

The Vocational Expert ("VE") identified Plaintiff's past work of janitor, Dictionary of Operational Titles (DOT) code 382.664-010, which was medium exertional work with a specific vocational preparation (SVP)[4] of 3; fast food worker, DOT code 311.472-010, light exertional work and SVP of 2; and resident supervisor, DOT code 187.167-186, sedentary exertional work and SVP of 6. (AR 62.) The ALJ asked the VE to consider an individual who could lift 20 pounds; can complete an 8-hour workday if given the option to alternate between sitting and standing, as needed, in up to 30-minute increments; and limited to simple, repetitive tasks. (AR 62.) The VE testified that such a person could not perform Plaintiff's past relevant work, but could perform other work as an office helper, DOT code 239.567-010, light exertion level and SVP 2; cashier, DOT code 211.462-010, light exertion level and SVP 2; and surveillance system monitor, DOT code 379.367-010, light exertion level and SVP 2. (AR 63.).

Plaintiff's counsel inquired whether there would be any jobs available if this worker was off task 15 to 20 percent of the day, absent two days of the month, or is unable to perform her work three days of the week due to headaches. (AR 67.) The VE responded that there would be no jobs available under that scenario.

**D.  The ALJ's Decision**

In a decision dated January 15, 2015, the ALJ found that Plaintiff was not disabled. (AR 19–29.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 21–28.) The ALJ decided that Plaintiff has not engaged in substantial gainful activity since

---

[4] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id.*

8

January 31, 2013, the application date (step 1). (AR 21.) The ALJ found that Plaintiff had the severe impairments of (1) coronary artery disease, (2) hypertension, (3) affective disorder, (4) anxiety disorder, (5) obesity, and (6) chronic obstructive pulmonary disease (COPD) (step 2). (AR 21–22.) However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step 3). (AR 22–23.) The ALJ determined that Plaintiff had the residual functional capacity ("RFC")[5]

> to perform light work as defined in 20 CFR 416.967(b) except she can complete an eight hour workday if given the option to alternate between sitting and standing, as needed, in thirty minute increments, and is limited to simple repetitive tasks.

(AR 23.)

The ALJ determined that, given her RFC, Plaintiff was unable to perform any past relevant work (step 4), but that Plaintiff was not disabled because she could perform a significant number of other jobs in the local and national economies, specifically office helper, cashier, and surveillance system monitor (step 5). (AR 27–28.) In reaching his conclusions, the ALJ also determined that Plaintiff's subjective complaints were not fully credible. (AR 16–17.)

### III. SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "Substantial evidence is more than a

---

[5] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

9

mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## IV. APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)–(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20

C.F.R. 404, Subpart P, App. 1. *Id*. §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. *Id*. §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## V. DISCUSSION

Plaintiff contends that the ALJ failed to articulate a legally sufficient rationale to reject the opinions of treating psychiatrist Dr. Shaheen and consultative examiner Dr. McNairn. (Doc. 19 at 5.) The Commissioner contends substantial evidence supported the ALJ's discounting of Dr. Shaheen's and Dr. McNairn's opinions. (Doc. 21 at 4–5.)

### A. Legal Standard

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.; Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). "To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions." *Cooper v. Astrue*, No. CIV S–08–1859 KJM, 2010 WL 1286729, at *2 (E.D. Cal. Mar. 29, 2010). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, and those reasons must be supported by substantial evidence in the record. *Id.* at 830–31; *accord Valentine v.*

11

*Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citation omitted).

"[E]ven when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison*, 759 F.3d at 1012 (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)). If an ALJ opts to not give a treating physician's opinion controlling weight, the ALJ must apply the factors set out in 20 C.F.R. § 404.1527(c)(2)(i)–(ii) and (c)(3)–(6) in determining how much weight to give the opinion. These factors include: length of treatment relationship and frequency of examination, nature and extent of treatment relationship, supportability, consistency, specialization, and other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)(i)–(ii), (c)(3)–(6).

**B.  The ALJ Did Not Err in His Assessment of the Opinion of Treating Physician Dr. Shaheen.**

Plaintiff was treated by Dr. Shaheen on four occasions, from June 20, 2013, to February 24, 2014. (AR 25–26, 393–412, 486–71.) Dr. Shaheen assessed Plaintiff with panic disorder with agoraphobia, psychotic disorder NOS, major depression, agoraphobia without history of panic disorder, and amphetamine dependence, and prescribed medication for depression, psychotic and paranoid symptoms, and insomnia. (AR 396, 398.) His clinical findings included moderately impaired concentration and mildly impaired memory. (AR 469.) Dr. Shaheen opined that Plaintiff had poor ability (defined as "the individual cannot usefully perform or sustain the activity") to: understand, remember, and carry out complex instructions; maintain concentration, attention, and persistence; perform activities within a schedule and maintain regular attendance; complete a normal workday and workweek without interruptions from psychologically based symptoms; and respond appropriately to changes in a work environment. (AR 471.)

Although not specifically identified by the ALJ as a basis for its rejection, Dr. Shaheen's opinion is contradicted by the medical opinion evidence of Disability Determinations Service psychiatric consultants Drs. Jacobs and Barrons, who both opined that Plaintiff's ability to: carry out detailed instructions; perform activities within a schedule and maintain regular attendance; complete a normal workday and workweek without interruptions from psychologically based symptoms; and respond appropriately to changes in the work setting, was only "moderately limited." (AR 80, 96–97.) Thus, the ALJ was required to state "specific and legitimate" reasons, supported by substantial evidence, for rejecting Dr. Shaheen's opinion. In rejecting Dr. Shaheen's opinion, the ALJ stated:

> Dr. Shaheen has treated [Plaintiff] but his assessment is entirely inconsistent with progress notes and the claimant's breadth of daily activity. Further, Dr. Shaheen appears to have relief on the claimant's subjective reporting in formulating his assessment which, as noted elsewhere in this decision, is not entirely corroborated by evidence in the record. I give his opinion little weight.

(AR 26.)

### 1. Objective Medical Evidence

The ALJ properly rejected Dr. Shaheen's assessment of Plaintiff because it was not consistent the objective medical evidence, including Dr. Shaheen's own treatment notes. *See Valentine v. Comm'r Soc. Sec. Admin.,* 574 F.3d 685, 692–93 (9th Cir. 2009) (contradiction between treating physician's opinion and his treatment notes constitutes specific and legitimate reason for rejecting opinion); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (same); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly rejected the opinion of treating physician, where treating physician's opinion was inconsistent with his own examination and notes of claimant); *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (a treating physician's opinion is properly rejected where the treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding that the ALJ properly rejected the opinion of a treating physician since it was not supported by treatment notes or objective medical findings); *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995)

13

(ALJ properly rejected medical opinion where doctor's opinion was contradicted by his own contemporaneous findings); *Teleten v. Colvin*, No. 2:14-CV-2140-EFB, 2016 WL 1267989, at *5–6 (E.D. Cal. Mar. 31, 2016) ("An ALJ may reject a treating physician's opinion that is inconsistent with other medical evidence, including the physician's own treatment notes.") (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Bayliss*, 427 F.3d at 1216; *Khounesavatdy v. Astrue*, 549 F. Supp. 2d 1218, 1229 (E.D. Cal. 2008) ("[I]t is established that it is appropriate for an ALJ to consider the absence of supporting findings, and the inconsistency of conclusions with the physician's own findings, in rejecting a physician's opinion.") (citing *Johnson*, 60 F.3d at 1432–33).

As the ALJ noted, Dr. Shaheen's treatment notes from June–September 2013 indicate Plaintiff had good eye contact, was pleasant and cooperative, her speech and psychomotor skills were normal, she was attentive, and she had fair memory. (AR 25, 386, 393–95, 407.) Plaintiff reported feeling "less depressed and fatigued" and "sleeping better" with her medications, from which she reported no side effects. (AR 25, 406.) The ALJ observed that Dr. Shaheen's treatment notes indicated that Plaintiff had goal-oriented thought processes, unremarkable thought content, and no psychotic symptoms. (AR 407.) Dr. Shaheen noted that Plaintiff was "feeling a lot better" with her current medication regimen. (AR 25, 411.)

The ALJ further noted that other treatment notes from July and September 2014 (after Dr. Shaheen opined that Plaintiff's ability to work was significantly impaired by her mental illness) showed Plaintiff's psychiatric symptoms were "[u]nremarkable (normal)." (AR 25, 685, 688.) As the ALJ observed, in October 2014 treating psychiatrist Dr. Saadabadi indicated that Plaintiff was "pleasant and cooperative with good medication adherence," with neat grooming, good eye contact, normal psychomotor skills, cooperative behavior, appropriate affect, coherent and logical thoughts, and intact attention and concentration. (AR 25, 675–77.)

Such consistently normal or improved findings fail to support Dr. Shaheen's opinion that Plaintiff cannot "usefully" complete complex tasks, maintain concentration, perform activities within a schedule, complete a normal workday or workweek, or respond appropriately to changes in a work setting. (*See* AR 386, 393–95, 406–07, 411, 471, 675–77, 685, 688.)

14

Thus, substantial evidence supports the ALJ's finding that treatment notes showed Plaintiff's significant improvement as well as essentially normal mental status findings that are entirely inconsistent with the severe limitations Dr. Shaheen assessed. This inconsistency was a specific and legitimate reason for the ALJ to discount Dr. Shaheen's assessment.[6] *See Bayliss*, 427 F.3d at 1216; *Rollins,* 261 F.3d at 856; *Connett*, 340 F.3d at 875; *Tonapetyan*, 242 F.3d at 1149.

### 2. Plaintiff's Level of Activity

The ALJ also accorded "little weight" to Dr. Shaheen's assessment of Plaintiff because it was inconsistent with Plaintiff's "breadth of daily activity." (AR 26.) Specifically, the ALJ observed that Plaintiff

> told Dr. McNairn that she completes household chores including cooking and cleaning, attends to her personal care without assistance, shops and runs errands independently, visits with family and friends, watches television and listens to music. At the hearing, Plaintiff testified that she watches television, prepares simple meals, vacuums, sweeps, washes dishes, does laundry, and grocery shops. She also uses a computer for up to an hour a day to check Facebook. She also drives and manages her finances. She was able to understand and fully respond to all questions posed of her at the hearing.

(AR 26.)

The Ninth Circuit has determined an ALJ may reject an opinion when the physician sets forth restrictions that "appear to be inconsistent with the level of activity that [the claimant] engaged in . . . ." *Rollins*, 261 F.3d at 856; *see also Fisher v. Astrue*, 429 Fed. App'x 649, 652 (9th Cir. 2011) (concluding the ALJ set forth specific and legitimate reasons for rejecting a physician's opinion where the assessment was based upon the claimant's subjective complaints, and limitations identified by the doctor conflicted with the claimant's daily activities). Because Plaintiff's reported level of activity exceeded the limitations assessed by Dr. Shaheen, this was a specific and legitimate reason to give less weight to his opinion.

---

[6] To the extent that Plaintiff relies on *Embrey v. Bowen*, 849 F.2d 418 (9th Cir. 1988), for the proposition that the ALJ must discuss the evidence supporting a conclusion with sufficient specificity, s*ee* Doc. 19 at 4, *Embrey* is distinguishable. In *Embrey*, the court held that an ALJ's determination that sufficient objective findings do not support a treating physician's opinion is not, without more, a sufficiently specific reason to reject that opinion. 849 F.2d at 421–22. Here, as set forth above, the ALJ found the objective medical evidence undermined Dr. Shaheen's assessment, and discussed the objective medical findings relevant to this conclusion–including Dr. Shaheen's own treatment notes. Thus, in this case, unlike in *Embrey*, the ALJ's discussion of the objective medical evidence did not lack specificity.

15

### 3. Plaintiff's Subjective Reporting

Finally, the ALJ properly discounted Dr. Shaheen's assessment of Plaintiff because Dr. Shaheen "appears to have relied on [Plaintiff's] subjective reporting in formulating his assessment . . . ." (AR 26.) As discussed above, Dr. Shaheen's treatment records overall fail to provide objective clinical findings that would support the level of limitation assessed, strongly indicating he relied primarily on Plaintiff's subjective complaints and self-reporting of symptoms.

A treating physician's opinion is properly rejected if based on discounted subjective complaints. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *Tonapetyan*, 242 F.3d at 1148-49. In this case, the ALJ found Plaintiff's testimony not credible and Plaintiff has not challenged that finding. (*See* AR 26–27.) Plaintiff's lack of credibility was therefore a specific and legitimate reason, supported by the record, for the ALJ to discount Dr. Shaheen's opinion to the extent that it was based on Plaintiff's subjective complaints.

In sum, the ALJ provided sufficiently specific and legitimate reasons to reject the opinion of Plaintiff's treating physician Dr. Shaheen, and therefore neither reversal nor remand on this basis is warranted.

**C. The ALJ Erred in His Assessment of the Opinion of Consulting Examiner Dr. McNairn, but Such Error is Harmless.**

Plaintiff was evaluated by Dr. McNairn on May 16, 2013. (AR 371–77.) His clinical findings included that Plaintiff's psychomotor activity was slowed, her movements were awkward, and her eye contact was fair to good. (AR 374.) She was alert and oriented. (AR 375.) Plaintiff was slow in responding to questions but displayed no significant impairments in concentration, persistence, or pace. (AR 374.) Plaintiff's thought processes were "slowed" but "organized and logical." (AR 375.) Dr. McNairn noted that Plaintiff "was generally cooperative and pleasant throughout the evaluation but she seemed eager to claim mental illness and functioning difficulties" and that she "appeared to be exaggerating symptoms at times." (AR 374.)

Dr. McNairn diagnosed Plaintiff with major depressive disorder, moderate with psychotic

1 features; polysubstance dependence, in sustained remission; and rule out substance-induced
2 mood/psychotic disorder, and assigned a Global Assessment of Functioning Score of 55. (AR
3 376.) From this, Dr. McNairn opined that Plaintiff's ability to perform simple and repetitive
4 tasks is "mildly impaired" and to perform complex and detailed tasks is "moderately impaired";
5 that her ability to accept instructions from supervisors and interact appropriately with coworkers
6 and the public is "moderately impaired"; that her ability to perform work activities on a
7 consistent basis without special or additional instruction is "mildly-to-moderately impaired"; that
8 her ability to maintain work attendance and to complete a normal workday and workweek
9 without interruptions from psychological problems is "moderately impaired"; and that her ability
10 to deal with the usual stress encountered in a competitive workplace is "moderately to seriously
11 impaired." (AR 376–77.)

Like Dr. Shaheen's opinions, Dr. McNairn's assessment is contradicted by the medical opinion evidence of Disability Determinations Service psychiatric consultants Drs. Jacobs and Barrons. (AR 80, 96–97.) Thus, the ALJ was required to state "specific and legitimate" reasons, supported by substantial evidence, for rejecting Dr. McNairn's opinion. In reviewing the medical evidence and rejecting Dr. McNairn's opinion, the ALJ stated that he "gives Dr. McNairn's opinion some weight but based on the totality of the evidence, I find that it is overly restrictive. Further, his notation that [Plaintiff] appeared to be exaggerating her symptoms is significant and suggests that she presented herself in a manner that would support her application, rather than in an authentic way." (AR 26.)

Simply stating that Dr. McNairn's opinion was "overly restrictive" is not a specific reason for rejecting it. It is too general and not related to specific diagnoses, opinions, or observations made by Dr. McNairn. *See Bryant v. Colvin*, No. 15-cv-02982-JSC, 2016 WL 3405442, at \*17 (N.D. Cal. June 21, 2016); *Sweetin v. Colvin*, No. 2:13–CV–03091-WFN, 2014 WL 3640900, at \*13 (E.D. Wash. July 22, 2014). The ALJ also erred in rejecting Dr. McNairn's opinion because "the notation that [Plaintiff] appeared to be exaggerating her symptoms . . . suggests that she presented herself in an manner that would support her application, rather than in an inauthentic way." While this may constitute substantial evidence

17

to discount *Plaintiff's* credibility, it does not follow that *Dr. McNairn's* opinion can be properly discredited on this basis. As the above-quoted notation indicates, Dr. McNairn's opinion takes into the account the possibility that Plaintiff was malingering, and there is no evidence that the opinion, unlike that of Dr. Shaheen, is based entirely on Plaintiff's (discredited) subjective complaints. The ALJ therefore failed to provide "specific and legitimate" reasons for giving Dr. McNairn's opinion only "some weight."

This error is harmless because even if Dr. McNairn's opinion had been wholly credited, the ALJ's RFC finding would not be disturbed resulting in the same conclusion of non-disability. As set forth above, Dr. McNairn noted Plaintiff "displayed no significant impairments in concentration, persistence, or pace," and found that Plaintiff's ability to perform complex and detailed tasks, to accept instructions from supervisors, to interact appropriate with coworkers and the public, to perform work activities on a consistent basis, and to complete a normal workday and workweek without interruptions were "moderately impaired." (AR 374, 376–77.) In his RFC determination, the ALJ found that, in addition to the physical limitations noted above, Plaintiff was "limited to simple repetitive tasks." (AR 23.) Moderate limitations in concentration, persistence and pace are sufficiently accounted for by limiting a plaintiff to simple repetitive tasks. *See Thomas v. Barnhart*, 278 F.3d 948, 953, 955–56 (9th Cir. 2002); *Sabin v. Astrue*, 337 Fed. App'x 617, 621 (9th Cir. 2009) (limitation to simple, repetitive, routine tasks adequately captures moderate limitations in concentration, persistence and pace). In *Stubbs–Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008), the Ninth Circuit concluded the limitation to "simple, routine, repetitive" tasks accommodates findings that the claimant had a "slow pace" and "several moderate limitations in other mental areas." *Id.* at 1174. *See Hopkins v. Colvin,* No. 1:13–cv–00031 JLT, 2014 WL 3093614 at *15 (E.D. Cal. July 7, 2014) ("Plaintiff's [moderate] limitations with concentration, persistence and pace were addressed with the limitation to simple, repetitive tasks in the RFC."); *Stanley v. Astrue,* No. 1:09–cv–1743 SKO, 2010 WL 4942818 at *5 (E.D. Cal. Nov. 30, 2010) ("[I]n limiting Plaintiff to simple, repetitive tasks, the ALJ properly incorporated in his RFC finding [the physician's] opinion that Plaintiff had moderate difficulties in maintaining concentration, persistence, or

pace").

The Ninth Circuit has similarly concluded a limitation to simple tasks performed in unskilled work adequately encompasses moderate limitations with social functioning.[7] *See Rogers v. Comm'r of Soc. Sec. Admin.*, 490 Fed. App'x 15 (9th Cir. 2012) (holding that an RFC for simple routine tasks, which did not expressly note the claimant's moderate limitations in interacting with others, nonetheless adequately accounted for such limitations); *see also Henry v. Colvin*, No. 1:15-cv-00100-JLT, 2016 WL 164956, at *18 (E.D. Cal. Jan. 14, 2016); *Langford v. Astrue*, No. CIV S-07-0366 EFB, 2008 WL 2073951, at *7 (E.D. Cal. May 14, 2008) (finding that "unskilled work . . . accommodated [the claimant's] need for 'limited contact with others . . . .'"); SSR[8] 85-15. A claimant's low tolerance for stress in the workplace is encompassed in a residual functional capacity of simple, repetitive tasks. *See, e.g., Keller v. Colvin*, No. 2:13–cv–0221 CKD, 2014 WL 130493, at *3 (E.D. Cal. Jan. 13, 2014) (finding the ALJ "appropriately captured" a physician's opinion that the plaintiff required "low stress settings" by limiting the plaintiff to simple, repetitive tasks "equating to unskilled work"). Further, moderate limitations in the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms do not preclude a finding of non-disability. *Hoopai v. Astrue*, 499 F.3d 1071, 1076–77 (9th Cir. 2007). In fact, "a moderate limitation in the ability to complete a workday or workweek without interruption is consistent with and properly captured by a limitation to simple repetitive tasks." *Rodriquez v. Colvin*, No. 1:13–cv–01716–SKO, 2015 WL 1237302, at *6 (E.D. Cal. Mar. 17, 2015).

Plaintiff asserts that "a limitation to simple, repetitive work by itself does not adequately encompass difficulties with concentration, persistence, or pace," citing the unpublished opinion of *Brink v. Comm'r. of Soc. Sec. Admin.*, 343 F. App'x 211 (9th Cir. 2009), which distinguished

---

[7] Unskilled work is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568; 416.968. Unskilled work does not require working with people. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 201.00(I), 202.00(g).

[8] Social Security Rulings (SSR) are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989); *see also Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006).

19

*Stubbs–Danielson*. (*See* Doc. 19 at 8–9.) *Brink*, however, is inapposite. In this case–<u>like</u> *Stubbs–Danielson* and <u>unlike</u> *Brink*–Dr. McNairn's opinion did not include an explicit limitation on concentration, persistence, or pace. *See Brink*, 343 F. App'x at 212. *Cf. Cavanaugh v. Colvin*, No. CV 13–1222–TUC–JAS (DTF), 2014 WL 7339072, at *3 (D. Ariz. Dec. 23, 2014) ("In *Stubbs–Danielson*, the ALJ did not make an explicit finding that the claimant had pace limitations . . . In contrast, in Cavanaugh's case, the ALJ made a finding that she had a concentration, persistence, or pace deficiency."); *Bentancourt v. Astrue*, No. EDCV 10-0196 CW, 2010 WL 4916604, at *3–4 (C.D. Cal. Nov. 27, 2010) (where the ALJ accepted medical evidence of plaintiff's limitations in maintaining concentration, persistence, or pace, a hypothetical question to the VE including plaintiff's restriction to "simple, repetitive work" but excluding plaintiff's difficulties with concentration, persistence, or pace resulted in a VE's conclusion that was "based on an incomplete hypothetical question and unsupported by substantial evidence."). Indeed, Dr. McNairn expressly opined that Plaintiff "displayed *no significant impairments* in concentration, persistence, or pace." (AR 374.) (emphasis added).

In sum, the moderate limitations that Dr. McNairn found in his opinion are adequately addressed by the ALJ's RFC assessment, which is supported by substantial evidence, and on which the ALJ's determination of non-disability is based. The ALJ's failure to consider properly Dr. McNairn's opinion is therefore harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

## VI. CONCLUSION AND ORDER

After consideration of the Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated: **August 30, 2017**　　　　　　　　　/s/ *Sheila K. Oberto*
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE